## MICHAEL KENNY *v.* THE PEOPLE.

The act in relation to jurors, &c. (ch. 322, 1858), so far as it relates to the summoning of jurors in the county of Kings, is general, and requires that they shall be summoned by the commissioner of jurors to be appointed for the county.

Such act virtually abrogates all authority in the sheriff to summon jurors to serve in the courts of Kings county.

Under such act, after exhausting the first panel, a new panel may be summoned forthwith to attend said court upon one day's notice. (2 R. S., pp. 419, 420.)

Voluntary intoxication can furnish no excuse or immunity for crime; and so long as the offender is capable of conceiving a design, he will be presumed, in the absence of contrary proof, to have intended the natural consequences of his own acts.

WRIT of error to the General Term of the Supreme Court of the second district. The plaintiff in error was convicted of the crime of murder in the first degree at a court of Oyer and Terminer held for the county of Kings in July, 1863. The record was brought to the General Term of the Supreme Court by writ of error. The judgment was affirmed at the General Term, from which it is brought by writ of error to this court.

*C. E. Pratt*, for the plaintiff in error.

*S. D. Morris*, for the defendant in error.

POTTER, J. The first question raised in the case in behalf of the plaintiff in error is a challenge to the array of jurors. After the regular panel of petit jurors, duly drawn and summoned to attend the said court, had been exhausted, the said court ordered a new panel of petit jurors to be drawn by the commissioner of jurors for the county of Kings, and to be forthwith summoned by him, by a notice of at least one day, to attend the said court on the first day of July, 1863, on which last mentioned day the said commissioner of jurors returned a panel of petit jurors, drawn in pursuance of the said order, in the presence and with the assistance of the justices of the Court of Sessions of said county. After the said

panel of jurors had been called, the following challenge to the array was interposed on behalf of the prisoner : The defendant challenges the array of the panel of the jurors returned this first day of July, 1863, and the panel to try the defendant ordered under an order of this court during the session of the present Oyer and Terminer, after the regular panel had been exhausted; because such jurors have not been drawn according to law, in this :

1. That the drawing of said jurors has not been made pursuant to the provisions of the act of the legislature of the State of New York, passed April 17th, 1858, and in compliance therewith.

2. That said jurors have not been ordered and drawn pursuant to section 15 of said act.

3. That said jurors have not been summoned by the sheriff of Kings county.

4. That no order to the commissioner of jurors had been given by the judge who was to preside at the present Court of Oyer and Terminer previous to the commencement of the term of this court and opening of the court.

5. That there is no power in the court, during the present term of this court, to order the commissioner to summon jurors for service in this court.

Upon the legal issue presented upon this challenge the court held the challenge not to be good, to which the plaintiff excepted.

The act of the legislature, above referred to, makes special provision in relation to the selection, summoning and drawing of jurors in Kings county, among which provisions is one, found in the 15th section of the act, making it the duty of the judge who is to preside at the court to direct by an order under his hand what number of jurors shall be drawn for said court. This order should be made, of course, previous to the drawing, which, it is directed by the section, shall be fourteen days before the holding of the court; but the section also provides that, if no such order has been given, then 132 jurors shall be drawn. In this case no such order, prior to the court, was given, and the statute was complied with fully

by drawing the number, in such case prescribed, 132. In this there was no error; the provision that the judge make a previous order is directory. It is insisted that the order made in court, after exhausting the first panel, directing a new panel to be forthwith summoned to attend the said court, upon one day's notice, was unauthorized by this special statute, and the five several objections above are the grounds of objection specified. The first four of these objections are true, as matter of fact. The order of the court was not made pursuant to the act nor to the 15th section of said special act. It is not claimed that the order made in court was in pursuance of the provisions of that section or of that act. Whether it was legally and properly made is a question that will be discussed under the examination of the last ground of objection.

It is also true that the new panel of jurors was not summoned by the sheriff of Kings county. The act of 1858, so far as it relates to *summoning* jurors in the county of Kings, is general, and requires that they shall be summoned by the commissioner of jurors to be appointed for the county. Section first of that act so provides, and section 41 of the same act provides that the manner of summoning under that act shall supersede all other methods; it virtually abrogates all authority in the sheriff to summon juries for the courts in Kings county.

The fact that no order to the commissioner of jurors had been given by the judge who was to preside, previous to the court, was immaterial. The act of 1858 was not a repeal of another statute, which expressly conferred that power upon the court, as will be noticed in passing upon the next following ground of objection.

The last of these objections is: " That there is no power in the court, during the present term of this court, to order the commissioner to summon jurors for service in this court."

If the court had the power to order a new panel, as we have already shown, the summoning must have been by the commissioner. Confining ourselves, then, to the specific objection, the only question to be examined is the question of power in the court to order a new panel. The Revised Statutes, vol.

2, pp. 419, 420, marg. paging (vol. 3, 5th ed., 718), provides that "When a sufficient-number of jurors, duly drawn and summoned, do not appear, or cannot be obtained to form a jury, the court may order the sheriff to summon from the bystanders, or from the county at large, so many persons qualified to serve as jurors as shall be sufficient." By no express provision, that I am aware of, has this power been abrogated, and by no necessary implication has this power been affected, except so far as the special statute, in relation to the county of Kings above cited, substitutes the commissioner of jurors for the sheriff in the summoning of jurors. The act of 1861, chapter 210, amending the Revised Statutes in relation to drawing jurors in certain cases, expressly excepts the county of Kings from its effect. I think, therefore, the challenge to the array of jurors, for neither of the reasons presented, was well taken.

Four points are made in the case, upon exceptions taken by the prisoner's counsel, to the refusal of the judge to charge the jury. The requests to charge are as follows:

1. "Intoxication does not furnish immunity of crime, but may be considered in determining what degree of crime has been committed."

2. "That intoxication may be considered in determining whether the homicide was committed by premeditated design."

3. "If the jury believe that the accused was in a state of mind from intoxication that rendered him incapable of premeditation or design, they must find manslaughter."

4. "If the jury find the accused was in a state of mind, although caused by the voluntary use of intoxicating liquor, that his judgment was obscured or impaired, so that he was incapable of knowing the degree of violence he was perpetrating, or properly calculating its effects, they must find for the lesser offense, manslaughter."

In order to show the application of these propositions to the case, it is necessary to present some of the leading facts established by the evidence. A fair abstract of these is found in the opinion of the justice who delivered the opinion in the case, in the Supreme Court, as follows:

"The prisoner is a car driver. On the night of the 21st of April, at eight o'clock, with his wife and two small children, he entered the grocery store of Frederick Mohrmann, at the corner of Fulton and Albany avenues, in the city of Brooklyn, and purchased some groceries for his family use. While there he commenced speaking about some railroad conductor with whom he had a quarrel about two hours previous. His wife said the conductor was a nice man, and did not want to do him any harm. He told her in an angry tone not to interfere in his business, and be quiet, otherwise he would punch her. He thereupon struck her in the face and kicked her. Mohrmann came from behind the counter and told him to leave the store — that he wanted no fighting, and if he did not stop he would put him out. Kenney said he could not put him out. Mohrmann made the attempt and failed. He thereupon called the witness, Rink, to assist him, and by their joint efforts he was removed from the store to the street, and the door locked, and while this was being done he declared he would kill the Dutch son of a bitch — meaning Mohrmann. The prisoner then threw stones through the windows and doors of the store, and said he wanted his two children. The door was opened by Mohrmann and the children put out into the street, and the door closed again. He also threw coal, a coal shovel, a measure, and with a stone of about twenty pounds weight, smashed open the door, and came into the store. Here he took up a saw and a piece of ham and threw them at Mohrmann and struck him with them. The prisoner went again into the street, and the door was again shut against him. He broke the door in once more and came into the store. There was in the store what the witnesses call a meat bench, upon which was lying a large knife. The prisoner seized this knife and struck the bench once, then rushed into the room behind the store, when he met the deceased, John Ravensburg, a person residing with Mohrmann at the time, and with whom the prisoner had no words or controversy, and struck him three blows or thrusts with the knife, two of which entered the chest and the other one the abdomen of the deceased, who died therefrom almost

instantly. The prisoner at once became quiet, consulted with his wife where he should go, and as to the best means to escape. She recommended him to go to East Brooklyn, and he left the scene of the murder, going in that direction, after telling his wife that if any policeman made inquiry to say he had not been about there that night." "The proof leaves little doubt that the prisoner was in a state of intoxication more or less at the time, but otherwise in the full possession of his senses, and quite conscious of what he was doing. There was also proof to show that while sober he was a civil man, but when drunk unusually vicious."

"The court instructed the jury, among other things, that voluntary intoxication furnished no immunity nor excuse for crime, that even where intent is a necessary ingredient in the crime charged, so long as the offender is capable of conceiving a design, he will be presumed, in the absence of proof to the contrary, to have intended the natural consequences of his own act, and when one, without provocation, kills another, with a deadly or dangerous instrument, no degree of intoxication, short of that which shows that he was at the time utterly incapable of acting from motive, will shield him from conviction. In the present case the jury would consider, from the conduct and acts of the prisoner in the afternoon, as disclosed by the testimony of those who were with him, from his going into the store for the purpose of making a purchase of family groceries and supplies, and the other circumstances attendant, and immediately consequent on the transaction, whether he was capable of acting from motive or not; that the principal question to be determined by the jury, if they found the prisoner guilty of killing the deceased, was whether the crime was murder or manslaughter. To convict of murder it was necessary that the killing should have been perpetrated from a premeditated design to effect the death of the deceased or of any human being; it was therefore sufficient to convict, if the intention of the prisoner was to kill the storekeeper, although he may not have intended to kill the deceased; if that intention existed, although it was conceived and formed immediately before the fatal act

was committed, the offense was murder; if, on the other hand, the act was committed without a design to effect death, in the heat of passion, then the crime would be reduced to manslaughter. It therefore became material for them to consider whether such intent had been satisfactorily proved. To determine this, it was proper that the manner, acts, and conduct of the prisoner, prior to the act, his declaration that he would kill the storekeeper, his acts after that declaration, the instrument used, and the manner in which it was used, and his acts, conduct and statements immediately after the offense was committed, and upon his arrest, should be taken into view and carefully considered, and as the testimony showed that the prisoner was angry, and in a passion, at the time of his struggle with the storekeeper, and when he was put out of the store, it was especially important for them to consider what length of time elapsed after that, before the fatal act was committed, in determining whether he was acting under the impulse of passion, without any intention to kill, or whether such intention had been formed, and in fact existed when the fatal act was committed. If such intention was shown, they would find the prisoner guilty of murder; but if not, then they would convict him of manslaughter only."

To each of the requests, made by the prisoner's counsel above stated, the court declined to accede, except so far as is embraced and covered by the said charge, and refused to charge the jury as so requested, further or otherwise than as is charged, to which decision and refusal the counsel for the prisoner then and there duly excepted.

The whole charge of the judge is given, in order that the distinct points in the requests to charge may be seen. The charge is plain, clear, and conceded to be unobjectionable. No exception was taken to it. It was as favorable to the prisoner as he was entitled, from the case as it appears in all that was charged. The prisoner was indicted under the 5th section of the act of 1862, ch. 197, for murder in the first degree, and was convicted of that crime, that is: "of a premeditated design to effect the death of a human being."

It is not claimed that this act would be murder in the second degree. If it was not willful or premeditated murder, it would be manslaughter in the third degree, for the reason that the blows were struck in the heat of passion, without any design to effect death, or manslaughter in the fourth degree, for the reason that the person was in such an extreme condition of insensibility by reason of intoxication, or otherwise, that he was incapable of acting from volition. This latter condition is not claimed in behalf of the prisoner, and there is nothing in the evidence to show that he was not capable of reasoning, or competent to control his will. How, then, would it have been proper for the judge to have charged the jury, that intoxication might be considered by them in determining what degree of crime had been committed? It is not claimed that there was any intoxication, but such as was voluntary. There was no previous provocation. The proposition was not that the jury might consider the intoxication of the prisoner upon the question whether the blows were struck in the heat of passion, but to determine *what* crime had been committed. "This," as was well remarked by DENIO, J., in *The People* v. *Rodgers* (18 N. Y., 20, 21), "would be precisely the same thing as advising them that they might acquit of murder on account of the prisoner's intoxication, if they thought it sufficient in degree." This proposition in effect is what the court was requested to charge in the first and second propositions of the prisoner's counsel. If we are right in this view, the case of *The People* v. *Rodgers*, and the opinions delivered therein, and authorities therein cited, are conclusive, and control this case. The principle involved in the propositions or requests to charge in this case, cannot be distinguished in effect from that. The rule established in that case, and in fact, the uniform rule found in all the cases is: "that where the act of killing is unequivocal and unprovoked, the fact that it was committed while the perpetrator was intoxicated, cannot be allowed to affect the legal character of the crime." The requests to charge, therefore, that the jury might consider intoxication (without reference to the degree of intoxication) in determin-

ing what crime had been committed, or whether homicide had been committed "by premeditated design," were properly denied by the judge.

The third request to charge, while it is subject to the same objections as are the first and second, would, in addition to those objections, if charged, be equivalent to saying to the jury that if the prisoner, by his voluntary intoxication, had rendered himself incapable of premeditation or design, that the law would not impute to him the offense which would otherwise be its legal character. HARRIS, J., in the case of *The People* v. *Rodgers*, said: "I am not aware that such doctrine has before been asserted. It is certainly unsound." Indeed I have doubts whether the charge of the judge in this respect was not more favorable to the prisoner than the rule would justify. It may fairly be implied from the charge that the judge intended to instruct the jury that there was a degree of voluntary intoxication that would shield from conviction, for an act, which, if committed when sober, he might be convicted.

The fourth request to charge seems to be most objectionable of all. It might fairly be implied from a charge made in the language of that request, that though the act was committed by premeditated design, if the prisoner's judgment was so obscured by liquor that he was incapable of knowing the degree of violence he was perpetrating, or properly calculating its effects, they might find it an offense of a lower grade. What adds to this objection is, that the evidence presents nothing upon which to base such a charge. There is no feature of the case, in the facts or evidence, to warrant a jury to infer that the prisoner was in a state that rendered him incapable of understanding, or that his judgment was obscured or impaired by intoxication. It would have been improper for the court to charge the jury upon a hypothesis, not presented by the evidence and unwarranted by law, if the evidence did sustain the hypothesis. As was said in *The People* v. *Rodgers*, "if by a voluntary act the party temporarily casts off the restraints of reason and conscience, no wrong is done him if he is considered answerable for any

injury which in that state he may do to others or to society;"
or, in the language cited from Plowden, in the same case, "if
a person that is drunk kills another this shall be felony, and
he shall be hanged for it, and yet he did it through ignorance,
for when he was drunk he had no understanding or memory,
but inasmuch as that ignorance was occasioned by his own
act and folly, and he might have avoided it, he shall not be
privileged thereby." (Plowd., 19.)

The crime committed in this case, as was remarked by
BROWN, J., "was committed with circumstances of brutality
and atrocity almost unexampled." The evidence justifies the
verdict of the jury; the evidence is clear that the prisoner
was sober enough to commit an act to bring himself within
the meaning of the law defining murder in the first degree,
"a premeditated design to effect the death of a human being;"
that he was sober enough to force his way into the building
where his intended victim was, to trace him from room to
room; to seek to provide himself with a murderous weapon
fitted for the intended work; of announcing his intention,
and of executing his purpose by a repetition of fatal blows,
and of planning and executing an immediate escape from
justice. The law would indeed suffer reproach that did not
hold such a man sober enough to suffer the penalty of his
crime when fairly convicted. I am of opinion that no legal
error was committed on the trial, and that the proceedings
should be remitted to the Court of Oyer and Terminer, to
sentence the prisoner anew.

DAVIES, J. The plaintiff in error was indicted and con-
victed in the Kings county Oyer and Terminer, in July, 1863,
of the crime of murder in the first degree, and the conviction
was affirmed at the General Term of the Supreme Court.
The prisoner has now brought a writ of error to this court.
It is now urged on the part of the prisoner that the conviction
should be reversed on the ground of error in the Oyer and
Terminer, in overruling the challenge by the prisoner to the
array. The array was challenged on the grounds that after
the regular panel of petit jurors, duly drawn and summoned,

had been exhausted, the said court ordered a new panel of petit jurors to be drawn and summoned, forthwith, by the commissioner of jurors of said county, by a notice of at least one day, and who on the next day returned a panel of petit jurors, drawn in the manner directed by law; and thereupon the counsel for the prisoner interposed a challenge to the array, that said jurors had not been drawn according to law, in this: that the drawing of said jurors had not been made pursuant to the provisions of the act of April 17, 1858, and in compliance therewith; that said jurors had not been ordered and drawn pursuant to section 15 of said act; that said jurors had not been summoned by the sheriff of Kings county; that no order to the commissioner of jurors had been given by the judge who was to preside at said Court of Oyer and Terminer previous to the commencement and opening of said court; that there was no power in the court, during its then present term, to order the commissioner to summon jurors for service in that court. The district attorney demurred to said challenge, and the demurrer was sustained and the challenge overruled.

A brief reference to the provisions of the statutes will show that these objections to the array were untenable. Section 5 of Laws of 1853 (ch. 338) declares that the several courts, held in and for the county of Kings, may order a new panel or an additional number of grand or petit jurors to be drawn at any time during the sitting of said courts, and such new panel or additional number of jurors may be so drawn without any previous publication of notice, and the jurors so drawn shall forthwith be summoned by the sheriff, by such notice as the court shall direct, to attend said court at the time specified in said order. This act, in a previous section, directs the county clerk of the county to draw the requisite number of jurors to attend the courts therein.

By an act passed on the 17th of April, 1858 (ch. 322), it was declared by the first section thereof, that *the selection* and *summoning* of jurors in the county of Kings, should thereafter be performed by one officer, to be known as commissioner of jurors of said county. It is thus seen that by

this latter act, that the duties theretofore performed by the county clerk of that county, in the selection of jurors for the various courts to be held therein, and by the sheriff of said county in summoning of said jurors, were devolved upon, and thereafter were to be performed by the commissioner of jurors of said county, and all the powers theretofore exercised by either of said officers in relation thereto, were thereafter to be discharged by the commissioner of jurors created by said act, except so far as the same were modified thereby.

It was therefore competent for the court during its session to direct an additional number of jurors to be selected and drawn for the then present term thereof, pursuant to the act of June 8, 1853, and to direct that they be summoned by the commissioner of jurors of said county. That was the only officer in said county after the passage of the act of April 17, 1858, authorized to select and draw and summon jurors for the several courts held in said county, whether the same were the regular or usual panels drawn and summoned anterior to and in anticipation of the sitting of the various courts therein, or such new panels or additional number of jurors, as said courts might find necessary, in the due administration of justice, to require and order.

The requests to charge, made by the prisoner's counsel, were properly refused by the court. The law, upon the points suggested, has been settled by adjudication in this court, and no reasons are presented why the doctrine thus enunciated should be reviewed or disturbed. The case of *The People* v. *Rodgers* (18 N. Y., 9) was well considered, and the doctrine then declared should be rigidly adhered to. Judge DENIO, in the opinion of the court, declares that all the authorities agree upon the main proposition, namely, that mental aberration, produced by drinking intoxicating liquors, furnishes no immunity for crime.

In *Brown's Case* (Lew. C. C., 75, A. D. 1823) the prisoner was indicted for a rape, and urged in his defense that he was in liquor. HOLROYD, J., in addressing the jury, said: "It is a maxim in law that if a man gets himself intoxicated he is answerable to the consequences, and is not excusable on

account of any crime he may commit when infuriated by liquor, provided he was previously in a fit state of reason to know right from wrong. If, indeed, the infuriated state at which he arrives should continue and become a lasting malady, then he is not answerable." In the Case of *Rex* v. *Carroll* (7 Carr. and Payne, 145) the prisoner was tried in 1825 at the Central Criminal Court for murder. It appeared that shortly before the homicide the prisoner was drunk. His counsel, though he admitted that drunkenness could not excuse from the commission of crime, yet submitted that in a charge for murder the material question being whether the act was premeditated or done only with sudden heat and impulse, the fact of the party being intoxicated was a proper circumstance to be taken into consideration, but this was repudiated by PARKE, J., and concurred in by LITTLEDALE, J.

In the *Case of Rodgers* (*supra*), the prisoner's counsel requested the court to instruct the jury "that if they were satisfied that by reason of intoxication there was no intention or motive to commit the crime of murder, they should convict the defendant of manslaughter only." Such in substance were the requests to charge in the case at bar. The Court of General Sessions refused to charge as requested in *Rodgers' Case*, and this court held the refusal to be right, and said: "If by this request the counsel for the defendant meant, as the request seems to have been interpreted by the Supreme Court, that the jury should be instructed to take into consideration the intoxication of the defendant in determining the intent with which the homicide was committed, the proposition is not law. It has never yet been held that the crime of murder can be reduced to manslaughter, by showing that the perpetrator was drunk, when the same offense, if committed by a sober man, would be murder." That precise proposition, thus condemned by this court, was embraced in the fourth request of the prisoner's counsel for the judge to charge. It was in these words: "If the jury find the accused was in a state of mind, although caused by the voluntary use of intoxicating liquor, that his judgment was obscured or impaired, so that he was incapable of knowing the degree of

violence he was perpetrating, or of properly calculating its effects, they must find for the lesser offense, manslaughter." The court properly refused so to charge, and the previous requests were only modifications of the same general idea, namely, that the state of intoxication might be taken into consideration by the jury, by which the crime of murder could be reduced to manslaughter, if they found the prisoner was under the influence of intoxicating liquors at the time he committed the crime, when the same offense, if committed by him when not intoxicated, would have been murder. In this State the cases of *The People* v. *Hammell* and *The People* v. *Robinson* (2 Park. Cr. 223, 235), show the consistency with which the doctrine enunciated has been adhered to in our criminal courts and in the Supreme Court.

Judge DENIO, in his opinion in the *Case of Rodgers* (*supra*), justly observes that " when a principle of law is found to be well established by a series of authentic precedents, and especially when, as in this case, there is no conflict of authority, it is unnecessary for the judges to vindicate its wisdom or policy. It will, moreover, occur to every mind that such a principle is absolutely essential to the protection of life and property. In the forum of conscience, there is, no doubt, considerable difference between a murder deliberately planned and executed, by a person of unclouded intellect, and the reckless taking of life by one infuriated by intoxication; but human laws are based upon considerations of policy, and look rather to the maintenance of personal security and social order, than to an accurate discrimination as to the moral qualities of individual conduct. But there is in truth no injustice in holding a person responsible for his acts committed in a state of voluntary intoxication. It is a duty which every one owes to his fellow men, and to society, to say nothing of more solemn obligations, to preserve, so far as it lies in his power, the inestimable gift of reason. If it is perverted or destroyed by fixed disease, though brought on by his own vices, the law holds him not accountable; but if by a voluntary act he temporarily casts off the restraints of reason and conscience, no mercy is due him, if he is considered

answerable for any injury which in that state he may do to others or to society." The same doctrine was long since enunciated by that eminent judge, Lord MANSFIELD, who said, in the celebrated case of *The Chamberlain of London* v. *Evans*, in the House of Lords, Feb. 4, 1767, that "a man shall not be allowed to plead that he was drunk in bar of criminal prosecution, though, perhaps, he was at the time as incapable of the exercise of reason as if he had been insane; because his drunkenness was itself a crime, he shall not be allowed to excuse one crime by another." It is a settled maxim of the law "that a man shall not disable himself." These views appear to my mind to be eminently sound and wise, and receive my entire concurrence. They are decisive of the present case, and the judgment must be affirmed. The day fixed by the judgment for the execution of the sentence having passed, the proceedings must be remitted to the Supreme Court, with directions to that court to transmit the same to the Kings county Oyer and Terminer, with directions to that court to pronounce sentence anew against the prisoner.

All the judges concurring,
Judgment affirmed.