[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 360 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 361 
Some of the exceptions on the part of the prisoner on the trial of this cause were well taken, and consequently the supreme court was right in reversing the judgment of the oyer and terminer.
The defence complain that they were precluded, on the cross-examination of the medical witnesses who had testified in relation to the sanity of the prisoner, from putting certain hypothetical questions, founded upon a supposed state of facts which, as they contended, were already in evidence. After they had given their opinions on the direct examination, the counsel for the defendant should have been allowed to put inquiries tending to test the skill and capacity of the witnesses and the correctness of their conclusions; and to ask them whether certain facts already sworn to, and many of them by the witnesses for the people, did not furnish evidence of insanity; and the court of oyer and *Page 362 
terminer erred in rejecting the evidence. I think they had a right to put hypothetical questions to those medical witnesses, predicable of the facts then proved, or that might be fairly claimed to have been proved in the cause. And I do not say the court could not have permitted the cross-examination to have gone farther, and put questions upon mere supposition, or in any way calculated to test the correctness of the opinions of the witness, within a reasonable limit in the discretion of the court.
But the more important questions in this case arise upon the objections to the questions put by the prosecution to, and the opinions given by the medical witnesses. They were permitted, not only to give opinions when they had heard only a portion of the testimony in relation to the condition of the mind of the prisoner and without any previous acquaintance with him, but also, under those circumstances, to testify to their belief that he was sane. This was erroneous.
In my opinion a medical witness, who has been present during the whole trial and has heard all of the evidence, but had no previous knowledge of the prisoner, cannot, if the evidence be objected to, give his opinion as to the state of the prisoner's mind at the time of the commission of the alleged offence. In such a case, before the questions upon matters of science can arise, the witness must determine in his mind upon the truth of the evidence which he has heard; which is not a matter of science, but of fact for the jury. But he may be asked whether such and such appearances were symptoms of insanity, and whether such a fact, if it exist (and which has been sworn to), is or is not an indication of insanity. Questions of this nature can be answered without blending mere matters of science with those of fact only upon which the jury are competent and required to pass. Perhaps this rule has not always been observed, either in this country or in England: but it is believed to be correct and to be founded upon principle as *Page 363 
well as authority. (McNaghten's Case, 10 Cl. Fin., 210; 67Hansard's Parl. Deb., 728; 1 C. Kyr., 130; 2 Greenl. Ev.,
§ 373; Rex v. Wright, Russ. Kyr., 456. And sec Cow. Hill's notes, No. 528; Whart. Cr. L., 48; 1 Phil. Ev., 290; 2 Russ. on Cr., 925; Chitt. Med. Jur., 356; Rosc. Cr. Ev.,
180; 9 Mass., 225.)
Upon principle it may be doubted whether, strictly, medical witnesses should ever give an opinion upon the general question of the sanity or insanity of a prisoner; as that is a question for the jury. It is, in a sense, testifying to the very point the jury must decide, the general merits of the cause; especially upon a preliminary inquest to try the fact of insanity. (Jameson v. Drinkald, 12 Moore, 148; Rex v. Wright,supra; Norman v. Wells, 17 Wend., 161; Mayor of N.Y. v.Pentz, 24 id., 668; Fish v. Dodge, 4 Den., 311.) But where a medical man, conversant with the disease of insanity, has had sufficient previous opportunity by his own observation to become acquainted with the personal habits, conduct and appearance of the accused, upon authority I think he may be asked the general question, and give his opinion as to the sanity or insanity of the prisoner. In such cases, it might be impossible for him to communicate to the jury every fact and circumstance and all the details of conduct, habits and appearance and the other particulars upon which he had formed his conclusions. Of course he may be questioned as to these and as to his experience, skill, c.; but if he is conversant with the disease and has had sufficient opportunity to ascertain the state of the prisoner's mind and has formed an opinion, I think that opinion may be evidence for the jury.
The judgment of the supreme court must be affirmed.
All the judges, except GARDINER, Ch. J., who did not hear the argument and took no part in the decision, were in favor of affirming the judgment of the supreme court on the grounds: 1. That the court of oyer and terminer erred in *Page 364 
permitting physicians, who did not hear all the evidence relating to the mental condition of the prisoner, to give opinions as to his sanity, founded on the portion heard by them; and 2. That the court erred in excluding the hypothetical questions put to the medical witnesses, by the defendant's counsel, on the cross-examination. The court expressed no opinion on the other questions discussed in the foregoing opinion.
Judgment of the supreme court affirmed.