MARY B. HAGADORN, RESPONDENT, *v.* THE CONNECTI-CUT MUTUAL LIFE INSURANCE COMPANY, APPEL-LANT.

*Juror—what opinion or belief does not disqualify a person from acting as— Hearsay evidence—what statements inadmissible as being—Opinion of expert as to insanity—must be based upon a hypothetical case.*

In this action, brought by the plaintiff upon a policy of insurance issued by the defendant to her upon the life of her husband, one of the defenses was that the husband had committed suicide, and thereby avoided the policy. When the case was brought on for trial, several of the jurors stated, on being examined by the defendant's counsel, that they should consider the fact that a man had committed suicide as some evidence of insanity ; some stating that they should so consider it in some cases, and all stating that they should require other and additional evidence to establish it.

*Held,* that the jurors were competent, and that a challenge interposed by the defendant's counsel was properly overruled.

Upon the trial, a brother of the deceased was called by the plaintiff, and tes-tified that he himself was subject to attacks of disease, during which he remained unconscious for half an hour, or thereabouts. He was then asked whether he knew from the statements of others what he did while thus unconscious.

*Held,* that the evidence was inadmissible, as being merely hearsay.

A physician, called by the plaintiff, having testified that he had been present in court during all the testimony, and had heard the evidence as to the symptoms exhibited by the deceased, was asked the following question : " Assuming the statement in reference to the condition of Charles Haga-dorn and his history up to the time of his death, what is the opinion of the witness in respect to the condition of his mind at the time of his death ?"

*Held,* that it was error to allow the witness to answer the question.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order made at a Special Term, denying a motion for a new trial made upon a case and exceptions.

The action was brought upon a policy of insurance issued by the defendant to the plaintiff, upon the life of her husband. The insured hung himself while temporarily confined in a jail for drunkenness. The defenses were that the policy had been avoided by the intemperate habits of the deceased, by his alleged suicide, and by reason of misrepresentation contained in the application for the policy.

When the case was brought on for trial, four of the jurors, who were examined by the counsel for the defendant, stated that they considered suicide evidence of insanity. One testified that he should so consider it in some cases, and all stated that they should require other and additional evidence to establish the fact of insanity.

*S. C. Millard,* for the appellant.

*John Murdoch,* for the respondent.

LEARNED, P. J.:

Certain of the jurors, being examined as to their competency, testified that they thought a man's committing suicide was evidence of insanity. They were challenged for that cause, and were admitted. The defendant excepted. It does not appear whether this challenge was intended as one for principal cause or for favor. Assuming it even to have been a challenge for favor, there was nothing to show that the jurors were not indifferent between the parties. They had formed no opinion on the case in controversy. The opinions expressed were abstract, simply as to the effect of certain evidence. And as to that evidence, no one said that he considered it conclusive. (See *Boileau* v. *Life Ins. Co.,* cited 6 Abb. New Cas., 19.) One said only he should consider it such evidence in some cases; the others said that they should require other evidence to say that there was insanity. And certainly it cannot be said that, under no circumstances, is suicide any evidence whatever of insanity. Some persons, perhaps, are of the opinion that no sane man ever commits suicide. And we will not say that such persons might not properly be excluded as jurors in a case of this kind. But these jurors expressed no such opinion.

The next objection is that an allegation in the complaint, that the defendant waived a certain provision of the policy as to intemperance, was itself an admission that the deceased had violated this provision. This objection is untenable.

A brother of the deceased was called by the plaintiff and examined as to his own liability to certain attacks of disease. The object of this was to show that the deceased was suffering under a similar attack when he took his own life. The witness testified that during these attacks he was unconscious for half an hour or thereabouts. He was asked whether he knew from the statements of others what he did while he was thus unconscious. This was objected to and the objection was overruled. We think this evidence was inadmissible. The witness was merely stating what others had told him. If the facts were competent they could have testified to them.

Another witness, Ralph Parsons, testified that he had listened to the evidence showing the symptoms in Hagadorn's case, and had been present in court during all the testimony. He was asked, assuming the statement in reference to the condition of Charles Hagadorn and his history up to the time of his death, what was the opinion of the witness in respect to the condition of his mind at the time of his death? This was objected to on the ground that much of the evidence was not evidence from which an expert could speak to a jury. The objection was not perhaps as accurately stated as it might have been, but its meaning sufficiently appears. The question asked the opinion of the witness on the evidence in the case. In the case of *Reynolds* v. *Robinson* (64 N. Y., 589), the witness had heard the testimony of other witnesses as to certain services rendered by the plaintiff; he was personally acquainted with the value of such services, and he was asked the value of these services. It was held that this was improper, and that a hypothetical question should have been put. The question in the present case is much more objectionable. It did not appear which part of the evidence the witness believed, or on which he formed his opinion. It put him in the place of the jury. One plain objection to every such question is this. Although the witness has been in court and has heard the testimony it does not follow that he has

heard it correctly. He may have misunderstood or misapprehended a witness. When, then, such a question is put in this form, so that the answer must depend on what the recollections and impressions of the witness are as to the evidence which he has heard, it goes beyond the limits of questions to experts. This class of evidence is of a doubtful character at the best, and always tends to substitute the expert for the jury. The same may be said of the question put to Dr. Gregg.

The plaintiff urges that these questions are justified by the decision in *McCollum* v. *Seward* (62 N. Y., 316). It may not be easy to draw the distinction between that case and the subsequent case of *Reynolds* v. *Robinson, ut supra.* But it will be seen that in *McCollum* v. *Seward* the plaintiff had testified to the performance of services, and the Court of Appeals held that the question was, in substance : assuming that the services rendered were as described by plaintiff, what were they worth ?" Here was a single definite statement by a witness of services performed, and the court held that the reference to the testimony of that witness was substantially sufficient to permit a succeeding witness to estimate their value. But the present case is different. Here the witness was asked to draw a conclusion from the testimony of some six witnesses, including the objectionable testimony of the plaintiff's brother, above stated.

The case of *Bonard's Will* (16 Abb., N. S., 128), cited by plaintiff, does not touch on the point involved in these questions. The case of *People* v. *Lake* (12 N. Y., 358), is opposed to the plaintiff's position.

For these reasons, without examining any other questions, we think that the judgment and order should be reversed and a new trial ordered, costs to abide the event.

Present—LEARNED, P. J., BOCKES and FOLLETT, JJ.

Judgment and order reversed, new trial granted, costs to abide event.