Brady, J.
This action was brought for the purpose of procuring the possession of certain property consisting of a bond and mortgage and a house and lot in New York city, and also to cancel certain writings which purported to be executed by the plaintiff to the defendants, whereby the property came into the possession of the defendant Murdock for the benefit of the other defendants either personally or as guardians, and to cancel the same because the plaintiff was at the time of the pretended execution incompetent to execute the same, and because of the other informalities.
It appears that the plaintiff who at that time was, and now is, a married woman, on November 12, 1874, *368 executed and delivered to John B. Haskin two assignments of certain bonds and mortgages which were her separate property, received from the estate of her first husband, who was the father of the infant defendants William, James and Kate Taylor. These assignments of the bonds and mortgages to which they referred were absolute in character. Subsequently, and on or about February 1, 1875, the plaintiff executed and delivered to the defendant Haskin an instrument requesting him to assign the bonds and mortgages to the defendant Murdock, “in trust to collect and receive the, interest thereon and to pay the same over to me, and to invest and keep invested the principal for me during my natural life, and thereafter to pay the same to my heirs.” On or about May 1, 1875, the defendant Haskin, pursuant to such request executed and delivered to the defendant Murdock the assignment. The instrument executed by Haskin contained this trust: “ To have and to hold, the same unto the said party of the second part, her successors and" assigns for and in trust, nevertheless to collect and receive the interest on the said mortgages and the bonds accompanying the same, and' to pay the said interest over to the said Catharine Browne during her natural life, and to invest, and keep invested the principal of said mortgages upon bond and mortgage securities on real estate worth double the amount loaned for her, the said Catharine Browne, during her natural life, and thereafter to pay the same to her heirs, subject only to the provisos in the said indenture of mortgage mentioned.”
By the complaint the plaintiff demanded judgment that the bonds and mortgages be reassigned to her, or, if foreclosed, that then she be entitled to the fruits thereof, or that she be declared the owner of the premises and entitled to possession if purchased by the defendants on the sale; that the assignment to Haskin be declared void and be canceled; that the *369 request to assign to Murdock be declared void, or be reformed by cancelling the words “ during my natural life and thereafter to pay the same to my heirsand that the assignment of Haskin to Murdock be deqlared void as unauthorized and not ratified. The plaintiff claims that the defendant Haskin, at the time the assignment was made to him in 1874, was her legal adviser; that the assignments to him were without consideration and upon a parol trust, viz. to collect the income of the said bonds and pay it to her when collected ; that Haskin while thus constituted a trustee requested the plaintiff to sign the paper asking him to make the assignment to the defendant Murdock, denying any knowledge of the fact that one of the assigned mortgages had been foreclosed, and alleging in connection with the subject that she had refused to execute the papers that she sought to,have annulled.
The plaintiff alleged also that, when the assignments were made to Haskin, she was of feeble intellect and in an unsound condition physically and mentally, and unfit to dispose of her estate. This allegation refers to November 12, 1874.
She also alleges that when the request to assign to Murdock was executed, viz., on February 1, 1875, the defendant, Murdock represented that such paper was not an alienation or request to absolutely alienate for her all her interest in the bonds and mortgages, but was revocable by the plaintiff at her pleasure, and that the heirs took nothing under the words of limitation;. and the plaintiff alleged that the defendant Haskin had no legal authority to assign the mortgages to the defendant Murdock, and that the assignments therefore-were in excess of his authority.
It appears from the record, that the action was-brought on for trial before Justice Van Brunt at Special Term on April 11, 1878, when the court, of. its- *370 own motion, directed three issues to be tried before a jury, viz. :
First: At the time of the execution by the plaintiff of the exhibits “D” and “E” (meaning the assignments to the defendant Hasldn mentioned in the complaint) was she of unsound mind and incapable' of managing her affairs ?
Second: At the time of the execution by the plaintiff of the exhibit “F,” (namely, the request that the defendant Haskin should make the assignment mentioned to the defendant Murdock) was she ef unsound mind and incapable of managing her affairs ?
Third: Were these papers (namely the assignments mentioned in the complaint) executed by the plaintiff of her own free will and without being improperly influenced or controlled by the defendants or either of them %
It also appears from the record that in November, 1878, a trial was had upon these issues before Justice Donohue, who at the close of the testimony directed-a verdict upon each issue in favor of the defendants. The learned justice in thus disposing of the case gave his reasons at length. It is not necessary now to state them in detail, but they appear to be entirely satisfactory and a full justification of the course which he pursued.
In November 1879, the further trial of the action proceded at special term before Justice Van Brunt. In that proceeding the defendants read in evidence the testimony taken at the circuit and the clerk’s certificate of the finding of the jury, and other testimony was offered by both parties. Upon a due consideration of all the evidence the learned justice found in favor of the defendants, and rendered a judgment dismissing the complaint.
It appears further that on December 4, 1878, the plaintiff moved before Justice Donohue to set aside *371 the verdict, but the motion does not appear to have resulted in any determination by order. And it also appears that at the close of the testimony on the final trial before Justice Van Brunt at special term, the plaintiff moved for a new trial of the feigned issues by the jury, but before any decision upon the whole case was rendered by the justice ;—which motion was denied.
In deciding that the plaintiff’s complaint should be dismissed upon the merits, .Justice Van Brunt rendered the following opinion:
“Van Brunt, J.—A careful examination of the testimony shows that the trusts created in favor of the plaintiff and her children should not be interfered with by the court unless the court is compelled so to do by the facts proven and the law.
“ The evidence in this case I think shows conclusively that the creation was the voluntary and intelligent act of the plaintiff. She knew that her husband had squandered some portion of her property, and she feared for good reasons lest he should dispose of the rest and leave her children and herself penniless. She, probably in consequence of her excesses, was in an excited state, November 12, 1874, which excitement accentuated her desire to save the remainder of her property from her husband, and secure the same for herself and her children. But the evidence is far from showing'that her mind was in such condition that she was non compos mentis.
“The assignments executed on that day were intelligent acts done for an intelligent purpose. The same may be said of the request to assign, executed February 1,1875.
“The subsequent letters of the plaintiff show that she fully understood what had been done, and that it was in accordance with her own wishes.
“Under these circumstances, knowing that the *372 creation of the trust is for the benefit of the plaintiff, this court should not interfere and set aside the trust, upon the ground of incapacity or undue influence.
“In respect to the point that the plaintiff was the sole beneficiary under the trust, it is sufficient to say that the terms of the trust when ambiguous are to be construed by the light of the surroundings of the party creating the trust, and the objects which we can see they desired to obtain by the creation of the trust.
“The request of the plaintiff to Mr. Haskin is to assign to Mrs. Murdock, in trust, to collect interest and pay to her during life or upon her death the remainder over to her heirs. The use of the word “ heirs ” in this connection was inappropriate, the trust estate being wholly personal property, but when we remember that the heirs of the plaintiff and her next of kin were the same persons, viz.: her children, it becomes reasonably plain, that she intended to secure the interest of this money to herself during her life, and that after her death she desired that the principal should go to her children. I am of the opinion therefore that the plaintiff’s complaint should be dismissed upon the merits.”
An examination of this case voluminous as it is, carefully and critically, has led to the conclusion" that the views expressed by the learned justice as to the merits are not only correct; but that they are unassailable. There is no doubt that the execution of these papers was voluntary, as suggested by him, and that ■she understood, their purport; and it is quite clear that they were all resorted to for the purpose of protecting what property she had left from her husband, who had squandered some of her estate, and whom she was apprehensive would get possession of and dissipate the rest. It is quite clear that the object was to protect the remainder of her property from her husband and to secure it for herself and her children. The evi *373 dence also is entirely satisfactory upon the question of the soundness of her mind ; an unbiased perusal of it can lead to no other conclusion.
The design of the original assignments and the request to Mr. Haskin to execute an assignment to the defendant Murdock, and the execution of the instrument to the defendant Murdock which has been described, were all to accomplish the object stated, viz,, the preservation of the remainder' of the plaintiff’s estate for her benefit and that of her children.
The learned counsel for the appellant has presented an elaborate brief reviewing all the facts and circumstances of the case and the details of the several trials, and also a series of points which it will not be necessary, however, to nor,ice separately. His first point is that it was error to refuse a new trial of the issues directed to be tried by the jury, althcugh he admits that the judge had the right to direct them to find either way on such issues ; but he supposes that this power was improperly exercised because there was conflicting evidence and not sufficient testimony on any one point to justify it, to use his language. It is quite clear that the testimony, as already suggested, was so overwhelmingly in favor of the defendants upon these issues that it would have been the duty of the court to have set the verdict aside if the jury had found in favor of the plaintiff.
It was the theory of the plaintiff’s case, as already suggested, that whilst she was mentally and physically incompetent, so ill that she was lying in bed, the defendant Haskin, who had been her adviser, and who was then the guardian and agent of her children, approached her and took an assignment from her io himself of all the property, giving her nothing to show for it—in the language of the counsel for the plaintiff, not even a declaration of trust; she being then, as the defendant thought, in extremis; and the true object *374 of the defendant’s act was not to protect her, but was to cut her husband off from the estate. The object of these papers, however, as already suggested, according to the testimony as it is clearly shown, was to preserve what was left of the plaintiff’s property for herself and her children, and the theory of the plaintiff’s case therefore was not sustained.
The defendants insist that she was competent; that the acts wdiich she did were intelligent and proper; and that the character of her husband as a spendthrift justified her in taking the course she adopted in reference to what was left of her property.
It is not deemed necessary to go into a statement in detail of all the facts and circumstances by which the conclusion already expressed has been arrived at and justified, viz., that the plaintiff was competent and understood perfectly what she was doing. It is deemed sufficient to state generally the result of an examination of them.
There was no error committed, either, in the refusal of the special term to grant a new trial upon the special issues, because there were no violations of the laws of evidence suchas would warrant the granting of a new trial. The design of having the verdict of the jury upon the special issues, was to assist the court in making up its ultimate judgment; and the exceptions to the exclusion and admission of evidence in that proceeding, assuming that the case on the part of the appellant is in a condition justifying a review of such exceptions,—are not, nor is any one of them available. Perhaps the most important of these exceptions relates to the questions which were asked of Dr. Elliott.
The doctor was her attending physician upon the occasion when she was suffering from the excessive use of alcoholic stimulants, and he has described her condition to be one of great prostration. This was on November 9, 1874. And he further described it to be *375 that of “ dementia, simply a loss of mental power, continued inability to follow any continuous train of thought, an inability to remember even for five minutes together, what had been said to her, as evinced by her continually re-asking the same question.” And in continuation of his testimony he said : “ The continuation of the case was simply a very gradual improvment— slow improvment of her condition, though tolerably steady ; there was no relapse from that time, and I continued to see her up to December 14, at which time, though the improvement was very great, she had by no means recovered her intellectual powers.”
He was then asked how many times after November 9, he had seen her ; and he said he had seen her on the 10th, 11th, 12th, 13th, 17th, 18th, 19th, 21st; twice on the 22d, 26th, 28th, and November 30, and on December 3, 4, 8, and 14.
He was asked also : “ What were the symptoms of the disease, more particularly at night, on November 10, 11, and 12?” To which he responded that there were no special symptoms nor any hallucinations at night.
The doctor was then asked whether delirium of the kind he had mentioned and observed in the plaintiff caused unsoundness of mind ; which being objected to as incompetent, the court said: “I think this witness must be confined to what he saw of this particular case.” The witness was then told to answer the question, but to confine it to the plaintiff; and his answer was, ‘1 In this case it did cause decided unsoundness of mind, such as in my opinion, and to my knowledge from observation, unfitted her for consecutive logical action or thought.” He was then asked—and this forms one of the series of exceptions which have already been stated to be the most important of those taken on behalf of the plaintiff—“Did it render her incapable to transact business?” Which being ob *376 jected to was excluded, and an exception taken. He was then asked this question: “The symptoms that you have observed, and that you have testified to in this particular case, state if they were sufficient in this case to cause unsoundness of mind?” This was objected to, the objection was sustained, and the plaintiff excepted. He was then asked to state what symptoms he observed on November 12, 1874; and his answer was. “The symptoms were simply those that I have already described.” What were they on that day? he was then asked; and his answer was : “The symptoms were those of debility of mind and body in consequence of many of her observations, and a total unwillingness or inability to follow any one in conversation with her continuously in the subject of conversation, and she had a constant ranging from one subject to another without any apparent cause whatever.”
He was then asked: “Would such symptoms in your opinion, render the plaintiff competent or incompetent for the ordinary transaction of business ? ” And the question on being objected to was excluded and an exception taken. These three exceptions are perhaps, as already suggested, the most important of those taken on behalf of the plaintiff. There was another question asked, but which was excluded and to which exclusion, exception .was taken, viz.: “You have stated that from your own observation you knew of the condition of the plaintiff on November 12,1874, now state whether in your judgment and opinion, the plaintiff was competent or incompetent to execute any papers in regard to her estate ? ”
Two questions followed this and were also excluded, the last of which was : “ Are hallucinations a symptom of insanity?” The question was excluded, although no exception was taken. In excluding it the court said: “-I think the doctor has stated, and therefore, I don’t think it is a proper question ; I exclude it on *377 the ground that he has so stated; he has stated very fully what her condition was in his judgment, as to her mind.”
The learned judge seems to have excluded the questions to which exception was taken and which have been particularly mentioned, upon the ground, that the doctor had fully described the condition of the plaintiffs mind on November 12, when she executed the two assignments to the defendant Haskin. He had answered the question directly put to him, namely, “State, if you please, your opinion as to whether on November 12, 1874, the plaintiff in this action was sane or insane?” His response, the objection to the question being overruled—was that it was a question which he could hardly answer categorically; he would want to make some explanation. The doctor then proceeded to answer this question in a very unsatisfactory and, it may be said, obscure way, and was then asked to state what symptoms he observed on November 12, 1874; which he had already described. The doctor had been asked several questions in regard to the mental condition of the plaintiff, and had stated its peculiarity; but he was evidently unwilling to answer directly the question whether she was sane or insane. He had described the symptons of her condition as indicating debility of mind and body, in consequence of many of her observations, and a total unwillingness or inability to follow any one in conversation with her continuously in the subject of conversation ; and stated that she was constantly ranging from one subject to another without any apparent cause whatever. And he had gone substantially as far as a witness is allowed to testify in a case like . this.
It was said in the case of People v. Lake (12 N. Y. 358, 363), a case upon which the appellant relies, that a medical man conversant with the disease of insanity might be asked the general question and give *378 his opinion as to the sanity or insanity of the prisoner. In this case the doctor evidently was unwilling, from the answer which he gave to the question as to the sanity or insanity of the plaintiff, to reply to it categorically; and it is quite clear that he was not prepared to say that she was insane. It must be perfectly evident to any unbiased person who reads his testimony that he did not entertain any such thought. Having been allowed to answer that question, his other answer being considered, the plaintiff doubtless received all that was available from him.
Whether her delirium rendered the plaintiff incapable to transact business.and whether the symptoms the doctor observed were sufficient to cause unsoundness of mind, and whether such symptoms would, in his opinion, render the plaintiff competent or incompetent for the transaction of ordinary business, and whether she was competent or incompetent to execute any papers in regard to her estate, were questions for the jury to determine upon the testimony.
The extent to which the doctor’s testimony went was to the question whether she was sane or insane. That was involved in one of the issues, namely, whether she was of unsound mind and incapable of managing her affairs. This was a question which was to be determined upon her condition, about which the doctor was permitted to testify fully. Perhaps, however, in the application of the strict rules of evidence the questions as to the capacity of the plaintiff to manage her affairs, or her competency to do it, should have been admitted upon the authority of Gardner v. Gardner (34 N. Y. 155), in which the case of Wilkinson v. Pierson (23 Penn. 117) is cited with approbation. In both these cases kindred questions to those suggested were asked, and the court declared that they were admissible, and therefore that the rules of evidences were not violated in permitting them to be answered. In the *379 case in Pennsylvania, which involved the validity of a deed, the court permitted the plaintiff to ask one of his witnesses whether from the general appearance of the grantor he considered him, at the time mentioned, to be capable of making a contract or transacting important business ; and it was held that there was no impropriety in asking the witness his opinion from the appearance of the person, and that what the appearance was could be inquired of by either of the parties, so as to ascertain upon what the belief was founded.
But if the questions detailed were erroneously excluded, it is clear beyond doubt that their exclusion was not in any way prejudicial to the plaintiff’s case. If they had been answered, the alleged mental incompetency would not perhaps have been more effectually asserted by the doctor than it had been, for the reason, as we have seen, that he pronounced the symptoms detailed as evidence of unsoundness of mind, and which in itself, if it stood uncontradicted, would be sufficient to establish the alleged mental unfitness of the plaintiff to execute the instruments of the 12th of November, 1874. There is, however, an important element bearing upon this question and upon the theory of the plaintiff’s case, namely, the assignment to the defendant Murdock by the plaintiff and the preliminaries which preceded the execution of that instrument. The plaintiff sent for the defendant Haskin, and referring to the assignments of November 12, 1874, expressed a desire, for reasons which she then gave, that he should assign to the defendant Murdock the property embraced in the assignment to him as a trustee for her and her children. The incidents, facts and circumstances characterizing this change in the written title to such property, show conclusively that the plaintiff understood fully the nature of the assignments to the defendant Has-kin, which he promptly acknowledged to have been upon a trust verbally expressed, and proceeded at once, *380 at her request, to vest the title in another selected by her and upon the trust declared. If there were any well-founded doubt about the validity of the original assignments to the defendant Haskin, arising from the circumstances connected with their creation and delivery abstractly considered, the assignment to the defendant Murdock would necessarily dissipate it, for the reason not only that they were recognized as existing instruments by the plaintiff when the assignments to the defendant Murdock were projected by her, but for the reason that she did not then ask to have the assignments discharged or the subject-matter reassigned to her, but asked that the title should pass to her assignee and trustee, the defendant Murdock, from the defendant Haskin, in whom she had vested it by her assignments.
This paper being sustained is a competent answer to the plaintiff’s case, and therefore it is quite clear that the rejection of the evidence offered and considered herein could not possibly have resulted in her prejudice. No court of equity would disturb the transaction consummated by the' assignment to the defendant Murdock, on finding it to have been executed with a full knowledge of the incidents from which it sprung, and having due regard to the facts and circumstances prompting its execution, even although there was great-doubt about the validity of the original assignments to Haskin, for the reason that there can be no doubt about, the due execution of the assignment to the defendant Murdock or that the trust is for the plaintiff’s benefit, and designed for her protection against the dangerous influence of her husband in reference to her estate, of which she seems to have been apprehensive, and his improvidence which was established by the evidence.
The attention of the court has also been directed to the refusal of the learned justice presiding at the spec *381 ial term, to find certain requests of law and facts. An examination of them leads to the conclusion that while , one of them perhaps should have been found, nevertheless, it was not material to the consideration of the appeal. It may be conceded to exist, and yet it would have no effect whatever upon the judgment.
The learned counsel for the appellant has also presented views in reference to the instrument itself, its legal character and effect, but it is not considered necessary to examine it in the aspect suggested, and for the reason that the evidence establishes beyond peradventure that the intention of the plaintiff in executing the assignment in trust to the defendant Murdock, notwithstanding the word “ heirs” was used, was to secure the property described in it for the benefit of herself and her children. The defendant, Murdock, testifies, and there is nothing in the case to justify the as-* sumption that it is not strictly true, that she declined when asked to become a trustee, yielding only when the plaintiff appealed to her to consent for the sake of her children; and it is demonstrated also by it that the intention of the plaintiff was, as already suggested, that the income of her estate should be enjoyed by herself and her children, to whom she referred and whom she intended by the word heirs used in the instrument itself.
It is a familiar rule that a trust which does not contravene any statue, and is not violative of any rule of law, is to be governed by the intention of the person creating it, if it can be ascertained. In this case it was ascertained as already suggested. It could not only be ascertained from the facts and circumstances which led to its development, but also from the express evidence on the subject to which reference has been made.
In this connection it is not inappropriate to refer to the opinion of Justice Van Brunt, in which he very *382 justly says, that the use of the word “ heirs,” in connection witli the direction to collect the interest and pay it to the plaintiff during her life, was inappropriate, the trust estate being wholly personal property, but when we remember that the heirs of the plaintiff and her next of kin were the same persons, viz., her " children, it becomes reasonably plain, that she intended to secure the interest of this money to herself during her lile, and that after her death she desired that the principal should go to her children.
It is not inappropriate, either, to refer to his suggestion that under the circumstances developed by the testimony in this case, knowing that the creation of the trust was for the benefit of the plaintiff, this court will not interfere and set it aside on the ground of incapacity or undue influence.
An examination of the judgment in this case discloses that three bills of costs were allowed, one in favor of the defendant, Murdock, amounting to $611.40, one in favor of the defendants Kate Taylor and William James Taylor, of whom the defendant Haskin was guardian, amounting to $400.46, and another to the defendant Haskin individually, of $419.98, together with an allowance of five per cent, upon the value of the estate fixed by the complaint, such allowance to be equally divided among the parties entitled to costs.
We think that but one of the bills of costs allowed to Mr. Haskin should have been taxed, and that is the bill of costs to him individually, the defense interposed by him being, substantially, the same in reference to himself and his wards ; and that the other bill of costs to him as guardian should be disallowed. The objections to the items in the bill of costs for two trial fees does not seem to be well taken, because there were two trials, in fact, one, of the issues directed to be tried before a jury, and another the subsequent trial of the *383 case at the special term, and during which testimony other than that given before the jury was delivered.
The objection to the items of traveling expenses for witnesses named is not well taken, and the appeal from the taxation of those items was properly disposed of. We are inclined to reduce the amount of allowance granted in this case because there is some doubt as to whether the value of the estate is sufficiently proved, and such reduction should be to two and one half per cent, upon the value which was assumed on taxation as the sum upon which the allowance of five per cent, was to be calculated.
The judgment must be reduced according to these views, and as modified, affirmed without costs to either party.
Davis, P. J., concurred in the opinion ; Daniels, J., concurred, in the result.1