MAGGIE MADDEN, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, October 25, 1892.

1. **Evidence:** COMPETENCY OF NON-EXPERT TESTIMONY INVOLVING MATTER OF OPINION. It is a general rule that witnesses, who are not called to testify as experts, must state facts and not conclusions; but an exception is made to this rule, when the matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appears to the witness at the time, and when the facts, upon which the witness is asked to express an opinion, are such as men in general are capable of comprehending and understanding, as where an opinion descriptive of the appearance of a person or the duration of an occurrence is asked for.

2. ————: QUESTION INVOLVING DETERMINATION OF A MATTER IN ISSUE. A question is objectionable and properly ruled out, when it submits a matter in issue to the judgment of the witness. A question, whether a railway train had stopped sufficiently long at a station to enable the plaintiff to alight, if she had exercised due diligence, was *held* in this. cause to have been rightly excluded under this rule.

3. **Carrier and Passenger:** FAILURE TO AFFORD PASSENGERS SUFFI-
CIENT OPPORTUNITY TO ALIGHT. There was evidence in this cause
that the plaintiff, a passenger on a train of the defendant railway
company, proceeded to alight at a station of the company, but that
sufficient time was not afforded her therefor; that, as she reached the
door of her car, the train started; that, seeing her approach, a brake-
man pulled a bell cord and gave the customary signal to stop the
train; that the plaintiff placed her hand against the jamb of the door
to steady herself; that after this signal was given the train was
brought to a sudden stop, and that in consequence the door, which
was ajar and unfastened, was forcibly closed and the plaintiff's hand
injured. *Held,* that the evidence established a *prima facie* case of
negligence on the part of the railway company in failing to afford the
plaintiff sufficient opportunity to alight.

4. ———: ———: CONTRIBUTORY NEGLIGENCE OF PASSENGER. The
plaintiff, in her testimony, admitted that she had frequently taken
passage on the train and was familiar with its operation; that, when
the train started after the first stop, she could have taken a seat with-
out inconvenience to herself, and waited for the car to stop again;
that she saw the brakeman pull the bell cord and that the door was
open, and knew that the door, which swung on hinges, was not
fastened, and that the train ran only three or four feet after it had
started. *Held,* that contributory negligence on her part was not con-
clusively established by these facts.

5. **Negligence:** PLEADING IN JUSTICES' COURTS. Although particularity
of statement is not required in proceedings before justices of the
peace, yet where, in the statement of his cause of action, the plain-
tiff chooses his ground he is properly confined to that ground. *Held,*
accordingly, that, having merely alleged that the defendant had been
guilty of negligence in not giving her time to alight, the plaintiff in
this action could not depend upon the fact that the door of the car
had been left ajar and unfastened as an act of negligence.

6. **Damages:** COST OF MEDICINES AND MEDICAL SERVICES: FAILURE OF
EVIDENCE. A plaintiff in an action for personal injuries, in order to
have the assessment of his damages include any allowance for med-
ical services or medicines procured by him, must show either the cost
or the value of such services or medicines.

*Appeal from the St. Louis City Circuit Court.*—HON.
JACOB KLEIN, Judge.

REVERSED AND REMANDED.

*H. S. Priest* and *H. G. Herbel*, for appellant.

(1) The court erred in excluding the testimony of defendant's brakeman regarding the sufficiency of the stop at Edgebrook, to have enabled plaintiff, by the exercise of ordinary diligence, to alight from the train in safety. *Snyder v. Witner*, 48 N. W. Rep. 1046; *Railroad v. Huntley*, 38 Mich. 545. (2) The court erred in overruling the demurrers to the evidence, interposed by defendant, at the close of plaintiff's case, and of the whole case. *Hardwick v. Railroad*, 11 S. E. Rep. 832; *Hicks v. Railroad*, 46 Mo. App. 308; *Ryan v. Railroad*, 19 Atl. Rep. 181; *Stager v. Railroad*, 12 Atl. Rep. 821; *Railroad v. Hazzard*, 26 Ill. 377; *Solomon v. Railroad*, 104 N. Y. 437; *Railroad v. Overall*, 18 S. W. Rep. 142; *Gavit v. Railroad*, 16 Gray, 507; *Hickey v. Railroad*, 14 Allen, 431; *Worthington v. Railroad*, 23 Atl. Rep. 593; *Worheide v. Car Co.*, 32 Mo. App. 370. (3) The court erred in refusing the instructions asked by defendant. Authorities cited under point 2. (4) The court erred in giving the instructions asked by plaintiff. *Duke v. Railroad*, 99 Mo. 350; *Schmitz v. Railroad*, 46 Mo. App. 395. (5) The court erred in giving the instructions of its own motion. *Campbell v. Elsworth*, 20 S. W. Rep. 120; *Deil v. Railroad*, 37 Mo. App. 459; *Davis v. Graham*, 29 Pac. Rep. 1010; *Flynn v. Bridge Co.*, 32 Mo. App. 536. (6) The court erred in overruling defendant's motion for a new trial, as the damages were excessive. *Railroad v. Lyon*, 15 'S. E. Rep. 26.

*John J. O' Connor*, for respondent.

(1) The circuit court did not err in excluding the solicited testimony of defendant's brakeman regarding the sufficiency of the stop at Edgebrook to have enabled plaintiff to leave the train. The question

called for an opinion, and was properly refused. The witness should state the facts, and the jury alone should determine from the facts whether the stop was sufficient or not to enable plaintiff to alight. *King v. Railroad*, 98 Mo. 235; *Hurt v. Railroad*, 94 Mo. 255; *Gregory v. Chambers*, 78 Mo. 294; *Muff v. Railroad*, 22 Mo. App. 584. (2) It was the duty of defendant to stop its car a reasonable length of time to enable plaintiff to alight safely by the use of ordinary care on her part. Nor was she guilty of contributory negligence in leaving her seat and going to the platform when the car stopped the first time at Edgebrook. *Ridenhour v. Railroad*, 102 Mo. 270; *Leslie v. Railroad*, 88 Mo. 50. (3) The instructions given for plaintiff correctly state the law. *Furnish v. Railroad*, 102 Mo. 438. Judgment will not be reversed because of erroneous instructions, unless the errors are substantial and affect the merits of the action. *Ridenhour v. Railroad*, 102 Mo. 287 (on rehearing). (4) There is evidence supporting the fact that plaintiff has or will pay out money for medicine and medical aid. (5) Plaintiff's injury is permanent, caused her much pain, the loss of four months' earnings, and to contract a doctor's bill; also deprives her from taking positions in her trade, where her wages would be largely increased. Therefore, the damages assessed are not excessive. *Dimmitt v. Railroad*, 40 Mo. App. 654; *Honeycutt v. Railroad*, 40 Mo. App. 674; *Sheby v. Railroad*, 94 Mo. 575.

THOMPSON, J.—This action is brought by a passenger against a railway carrier for a negligent injury. It was commenced before a justice of the peace, and, on appeal to the circuit court and a trial *de novo*, there was a verdict and judgment for the plaintiff for $300, the full amount claimed, from which the defendant prosecutes this appeal. The statement filed before the

justice, upon which the action is prosecuted, is in the following language:

"Plaintiff states that defendant is a corporation, and, at the dates hereinafter named, owned and operated a line of steam railway extending across the state of Missouri; that, on the twenty-sixth day of October, 1891, plaintiff took passage on one of defendant's trains of passenger cars at St. Louis to go to Edgebrook, a station on defendant's line of railway, and situated in the county of St. Louis, and state of Missouri; that, when said train arrived at Edgebrook, it slacked and stopped, and plaintiff attempted to alight therefrom, but before she could do so, and as soon as she reached the platform of the car on which she was riding, said train was by defendant carelessly and negligently put in motion, and in an instant thereafter carelessly and negligently brought to a sudden stop, which caused plaintiff to fall against the frame of the door of said car; the door swung shut with great violence, hitting plaintiff's right hand and injuring the forefinger thereof, so that she will be permanently injured in said hand, causing her great pain, loss of time, and expense for medicine and medical treatment; that her injuries were caused by the negligence of defendant as aforesaid, to her great damage in the sum of $300. Wherefore, plaintiff prays judgment for this sum, with her costs made herein."

It is perceived that the negligence alleged in this statement consists exclusively in carelessly and negligently putting the train in motion, and then carelessly and negligently bringing it to a sudden stop, causing the plaintiff to fall against the frame of the car door, so that her hand was hurt by the door swinging shut. It is also perceived that the fact of the door being left unfastened, to swing on its hinges at the time when the train entered the station at which passengers were

to be put off, is not alleged as an act of negligence. At the trial in the circuit court the issue was confined to the negligence thus predicated in the statement. The evidence tended to show that the plaintiff, a little after eight o'clock in the evening, took passage at St. Louis on a train of the defendant, known as the Kirkwood accommodation train, for Edgebrook, a suburban station on its line; that, when the train arrived at Edgebrook, she arose from her seat and walked along the aisle of the car toward the door; that, when she got about opposite the first seat from the door, the train stopped at the platform of the station, but immediately started up again; that about the same time a brakeman who was on the platform of the car saw her approaching the door, and pulled the bell cord three times, giving the customary signal to stop the train; that by this time she had reached the door, and was standing therein with one foot on the platform and the other on the threshold of the door; that the train stopped suddenly after this signal had been given, which sudden stoppage caused her body to sway toward the door, against the jamb of which she placed her hand to steady herself; that just at this time the door closed and caught the forefinger of her hand, cutting off a small portion of the fleshy part together with a bit of the nail; that she then got off the car with the assistance of the brakeman, and did not discover the injury to her finger until she got some distance from the station, when she felt the moisture of the escaping blood and also a prickling sensation; that her vocation was that of a milliner, which vocation she was by the wound precluded from following for a space of some four months, and that she was put to expense for medical attendance, the amount of which was not proved.

On cross-examination she testified that, when the train started after the first stop she was in the aisle of the car opposite the first seat, and could have sat down there until the train was stopped without any inconvenience; that she had been riding on the accommodation trains of the defendant for several years and was familiar with their mode of operation; that she saw the brakeman pull the bell cord for the purpose of stopping the train, and saw the door open and knew that it was not fastened when she went through it; that it was an ordinary car door that swung on hinges, and that the train ran only three or four feet after it started up.

The defendant's evidence tended to show that the train made the ordinary stop at Edgebrook on the night in question; that the brakeman announced the station and got down upon the platform to assist the passengers off; that several passengers got off, after which the train started up; that, on mounting the train, the brakeman saw the plaintiff in the aisle walking toward the door of the car; that, knowing that Edgebrook was the station at which she usually got off, he pulled the bell cord to stop the train; that he then got down upon the platform by the time the train had stopped, and helped plaintiff off, after which the train went on; that she said nothing to him about receivng any hurt, and he knew nothing about it until told of it the next day; that the train was stopped in the usual manner, the conductor being at his usual place on the forward platform between the first and second coaches, looking through the train to see if everybody was off before he started up; that two or three other passengers got off at that station, and that he did not see the plaintiff in the aisle of the rear car at the time he gave the signal to start. He also stated that the plaintiff was in the habit of reading on the train while riding out to her home.

I. The first assignment of error is that the court on the objection of the plaintiff refused to allow the brakeman, already spoken of, testifying as a witness, to answer the following question: "Did your train stop long enough for her, if she had exercised diligence, to go from the place at which she was sitting to the platform and get off before it started?" If the court had allowed this question to be answered, it might not have been prejudicial error; but we are not prepared to say that prejudicial error was committed in ruling it out. The general rule is that witnesses, who are not called upon to testify as experts, must state facts and not conclusions. The reason rests upon the obvious principle that it is for the jury, and not for the witness, to draw conclusions. Recent cases in this state, affirming this rule, are *Gregory v. Chambers*, 78 Mo. 294, 299; *Hurt v. Railroad*, 94 Mo. 255, 260; *King v. Railroad*, 98 Mo. 235; *Muff v. Railroad*, 22 Mo. App. 584. An exception to this rule, founded upon a principle of necessity, exists in a limited class of cases; and, perhaps, the cases which admit of this exception have nowhere been better stated than in the following language of the supreme judicial court of Massachusetts: "The competency of this evidence rests upon two necessary conditions: *First.* That the subject-matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time; and, *second*, that the facts upon which the witness is called upon to express his opinion are such as men in general are capable of comprehending and understanding." *Commonwealth v. Sturtevant*, 117 Mass. 122, 137. This language was quoted with approval by the Kansas City Court of Appeals in *Muff v. Railroad*, *supra*. A class of cases, which fall within this exception, are those which admit of the opinions of witnesses as to appearances—as that a person

appeared to be drinking (*Choice v. State*, 31 Ga. 424), or to have been intoxicated at the time of the act in question. *People v. Eastwood*, 14 N. Y. 562. It is upon this ground than non-expert witnesses may give their opinions as to the sanity or insanity of a person, provided that such opinions are accompanied with a statement of the grounds upon which they formed their conclusions. Within the same exception is the point that it is competent to allow a non-expert witness to testify whether there was *time enough* to do a certain thing. Thus, in a trial for murder occurring in an affray, a witness who was present may be asked whether, when the deceased rushed upon the defendant, there was time enough for the latter to escape and get out of the way. *Stewart v. State*, 19 Ohio, 302. But, in an action on a building contract, it has been held proper not to allow the architect, testifying as a witness, to state whether certain extra work which had been ordered was of such a character as to render it impossible for the plaintiff to complete the building by the date named. *Campbell v. Russell*, 139 Mass. 278. This statement of doctrine and these illustrations clearly point to the conclusion, that this species of evidence will not be admitted in any case when the fact is susceptible of being proved in the ordinary way. The question which the court ruled out in the case before us is objectionable, in that it involved a submission to the witness of the question whether the plaintiff had in fact *exercised diligence* in rising and moving toward the door of the car to get off the train. This was tantamount to subjecting the whole case to the opinion of this particular witness; and it is a general rule, even in relation to expert evidence, that questions are not admissible which call upon the expert witness to decide the whole case in the place of the jury. *Jameson v. Drinkald*, 12 Moore, 148; *People v. Lake*,

12 N. Y. 358. It cannot escape attention that the question was so framed as to involve a decision by the witness of the question of the contributory negligence of the plaintiff; and it is too obvious for further discussion that such a form of question is inadmissible.

II. The next assignment of error is that the court should have sustained a demurrer to the evidence. This assignment of error is, in our judgment, equally ill-founded. To show that this contention is not tenable, it is only necessary to refer to a leading principle in regard to the liability of common carriers of passengers. That principle, stated and repeated again and again by the supreme court of the United States, is that, when carriers undertake to convey passengers by the powerful and dangerous force of steam, public policy and safety require that they shall be held to the greatest possible care and diligence—that the personal safety of passengers shall not be left to the sport of chance or to the negligence of careless agents. *Philadelphia, etc., Ry. Co. v. Derby*, 14 How. 468; *Steamboat New World v. King*, 16 How. 469. And that court has steadily adhered to the principle first announced by Chief Justice TANEY at circuit, that, although the carrier does not warrant the safety of his passengers, at all events, yet his undertaking and liability as to them go to the extent that he, or his agents where he acts by agents, shall possess competent skill, and that they shall, as far as human care and foresight can go, exert themselves to transport the passengers in safety. *Stokes v. Staltonstall*, 13 Pet. (U. S.) 181; *Railroad v. Pollard*, 22 Wall. (U. S.) 341; *Pennsylvania Co. v. Roy*, 102 U. S. 451, 456. Continuing the statement of this proposition, it is said by the court, speaking through Mr. Justice HARLAN, in the last-named case: "These and many other adjudged cases, cited with approval in

elementary treatises of acknowledged authority, show that the carrier is required, as to passengers, to observe the utmost caution characteristic of very careful, prudent men. He is responsible for injuries received by passengers in the course of their transportation which might have been avoided or guarded against by the exercise, upon his part, of extraordinary vigilance, aided by the highest skill. And this caution and vigilance must necessarily be extended to all the agencies or means employed by the carrier in the transportation of the passenger. *Pennsylvania Co. v. Roy*, 102 U. S. 456. This doctrine has been adopted by the supreme court of this state in its fullest extent, and that court has quoted with approval the enunciation of it given by Mr. Justice STORY in his work on bailments : "That passenger carriers bind themselves to carry safely those whom they take into their coaches, as far as human care and foresight will go; that is, for the utmost care and diligence of very cautious persons; and, of course, they are responsible for any, even the slightest neglect." Story on Bailments, sec. 601; *Lemon v. Chanslor*, 68 Mo. 340; *Gilson v. Railroad*, 76 Mo. 282, 287; *Leslie v. Railroad*, 88 Mo. 50, 55.

This rule would be of little practical value, if it were not enforced in judicial administration by a correlative rule of evidence. That rule is that, when an injury has been shown to be occasioned by an error of the carrier or his servants in operating the instrumentalities employed in the business as carriers, a presumption of negligence arises against the carrier, which casts on him the burden of showing that the accident happened notwithstanding the exercise on his part of the high degree of care which the law thus imposes upon him. *Coudy v. Railroad*, 85 Mo. 79, 85, and cases there cited; *Dougherty v. Railroad*, 9 Mo. App. 478, as affirmed by the supreme court in 81 Mo. 325, 329. Out

of this rule of evidence springs another which is sometimes said to refer itself to the maxim, *res ipsa loquitur*. That rule is that, where the vehicle or conveyance is shown to be under the control or management of the carrier or his servants, and the accident is such as under an ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of proper care. *Dougherty v. Railroad*, 9 Mo. App. 478; s. c., affirmed, 81 Mo. 325, 329, and cases cited. When, therefore, a passenger on board the vehicle of a carrier, without fault or negligence on his part, receives an injury proceeding from the vehicle of the carrier, or something connected therewith, this presumption of negligence arises. Unless, in such a case the injury proceeds from without, as where a shot is fired or a missile thrown by a trespasser, the only questions which arise relate to the negligence of the carrier and the contributory negligence of the passenger; and, if the latter is put out of the way, a presumption of negligence rests upon the carrier which he must explain to the satisfaction of the jury, or pay damages. From those principles it is plain that the plaintiff in this case cannot properly have been nonsuited, unless a conclusive presumption of contributory negligence arose out of her own testimony, or that of her own witnesses.

III. The contributory negligence of the plaintiff is, therefore, the next question to be considered in the case. From the statement of facts above given it cannot be said, as a matter of law, that she was guilty of contributory negligence. It has frequently been decided by the supreme court of this state, and by other courts, that it is not, as matter of law, contributory negligence for a passenger to attempt to alight

from a train while in motion; but that it may or may not be contributory negligence according to the speed of the train or other attending circumstances (*Doss v. Railroad*, 59 Mo. 27; *Kelly v. Railroad*, 70 Mo. 607; *Leslie v. Railroad*, 88 Mo. 50, 56)—considerations which generally take the question to the jury. Here the evidence adduced by the plaintiff tends to show that the train stopped at the platform of the station for the briefest possible period. One of her witnesses testifies that it did not stop at all, and that he was obliged to get off while it was still moving. Her petition, however, concludes her upon this question, and it must be taken that it did stop, although for a very brief period; long enough, however, to allow two or three passengers to get off. Before she could do so, it began to move, and, when it thus began to move, she was in the act of moving from her seat along the aisle toward the door for the purpose of getting off. The brakeman saw her in this attitude, and immediately pulled the bell cord three times, giving the customary signal for the train to stop. In this act of the plaintiff, under the circumstances, there is no rule of law with which we are acquainted that imputes contributory negligence to her. On the contrary, it appears that she did what an ordinary passenger, finding herself likely to be carried past her stopping place, would be apt to do under the circumstances. The most that can be said in favor of the defendant on this branch of the case is that the question of contributory negligence was a question for the jury, and the court submitted it to the jury.

IV. For these reasons the assignment of error predicated upon the refusal by the court of the following instruction tendered by the defendant is not well taken, since this requires the jury, upon the hypothesis of facts therein stated, to find that the plaintiff was guilty of contributory negligence as matter of law:

Madden v. The Mo. Pac. Ry. Co.

"The court instructs the jury that, if they believe from the evidence that the train, on which the plaintiff was at the time of her injury, stopped at Edgebrook station immediately before she was injured, and was immediately set in motion again, and, at the time it was thus put in motion, plaintiff was in the aisle of the car opposite the first seat from the car door and several feet from said door, and could have sat down on said seat or remained in the car until it was stopped, but instead of doing so walked out upon the platform of the car through said door, knowing at the time that it was not fastened, and that the train was about to be stopped, and while on said platform, either voluntarily or involuntarily, put or got her hand in such a position as to be injured by the closing of said door, she was guilty of such contributory negligence as bars a recovery herein, and your verdict will be for the defendant."

V. We are not impressed with the argument that the court erred in not refusing to give the first and second instructions requested by the plaintiff. They are in the nature of advisory instructions applicable to the evidence, explaining to the jury the principles of law upon which they are to proceed in arriving at their verdict; and while they are not drawn upon hypothetical states of fact, and do not point the jury to the conclusion at which they are to arrive if they find the existence of certain hypotheses of fact, and, might, for that reason, have been refused without error, yet it is not apparent to us that prejudicial error was committed in giving them.

VI. We have come to the same conclusion in regard to the first instruction, given by the court of its own motion, which was as follows: "If you believe and find from the evidence that the plaintiff was a passenger on the defendant's train, as explained in the other instructions given to you, and that

when said train reached Edgebrook, the point of her destination, the train stopped, and that she exercised ordinary diligence to leave the car in which she was; and if you further find from the evidence that, when she reached the platform, and, before she did alight from said car, the train was put in motion, and that she could not alight, and that then the said train was immediately brought to a sudden stop with a jerk, and that by reason of this plaintiff lost her balance and fell against the train or jamb of the door of the car, and that said door was, by reason of the sudden stop or jerk, swung shut, and the plaintiff's right hand was thereby caught, causing the injury to her finger complained of in this case, then your verdict should be for the plaintiff, provided that you also find and believe from the evidence that she was at the time exercising ordinary care and caution to avoid any injury."

It is perceived that this instruction does not separately submit to the jury the question of negligence in leaving the door ajar and unfastened, so that it might be suddenly closed to the injury of a passenger making an egress from the car at the stopping place; nor could it properly have embodied such an element, because that ground of negligence was not laid in the plaintiff's statement. This was proper; for, although particularity of statement is not required in proceedings before justices of the peace, yet, where in such a statement the plaintiff chooses his ground, he is properly confined to that ground. Indeed, no complaint is made of the court's action under this head. It is evident that to stop a railway train under the circumstances detailed by the evidence in this case with a sudden stop or jerk is not only not negligence, as a matter of law, but it is extremely doubtful whether it can be regarded as negligence as a conclusion of fact—in other words, whether in such a fact there is evidence of negligence to go to

the jury; since, from the nature of the case, the engineer could not know the reason of this signal, or why he was called upon to stop the train. For aught he could know a passenger may have fallen under the wheels, making it necessary to stop immediately in order to avert or minimize the danger. We dwell upon the fact that there is no evidence in the case tending to show that the engineer in charge of the train knew for what cause he was signaled to stop it, and no evidence tending to show that it was not stopped in the ordinary and customary manner, with which custom the plaintiff, who had long been a passenger on the train, must have been familiar. If, then, this instruction had predicated negligence, as a conclusion of law, upon the fact alone of stopping the train with a sudden jerk, it would have been manifestly erroneous.

It is perceived that the instruction does not predicate negligence upon the fact alone of the train being stopped with a sudden jerk, but that it states a hypothetical collection of facts which first require the jury to find that the plaintiff was proceeding with ordinary diligence to leave the car, and that she was exercising ordinary care and caution to avoid injury, and that, while she was leaving the car and before she could alight, the train was put in motion and then brought to a sudden stop, by reason of which she lost her balance and fell against the jamb of the door, receiving the injury in the manner stated, etc. Under the collection of facts thus stated in the instruction, the proximate cause of the injury was the act of the defendant in starting the train before the plaintiff had sufficient time to alight, and the sudden starting of the train and the slamming of the door were mere incidents. The failure to stop the train long enough to allow her with reasonable diligence to alight was a failure to exercise the care of a very cautious person, which our laws demand

of carriers of passengers, and was, hence, negligence as matter of law; and it is not necessary that there should have been negligence in stopping the train, or in leaving the door swinging on its hinges, in order to support the conclusion of law that the defendant is liable on the collection of facts stated in the instruction.

VII. It appeared from the evidence adduced by the plaintiff that she had been visited three times by a physician in consequence of the hurt which she received in alighting from the train, that she had visited his office four or five times, and that he had furnished the medicines used in his treatment, but it appeared that he had not rendered a bill for his services and medicines, and that she had not paid him anything for them; nor did it appear what the reasonable and customary value for such services and medicines was. Nevertheless, the instruction which the court gave upon the request of the plaintiff upon the measure of damages authorized them to "reimburse her for any money paid out by her for medicine or medical aid." As the jury gave her the full amount of damages claimed in her statement, $300, it is a reasonable conclusion that they must have allowed something under this instruction for the supposed value of the medical aid which she had received, of which there was no evidence. The giving of this instruction, in so far as it contained this element, was, therefore, erroneous.

As the case must go back for another trial, we add that it will be competent for the court to allow the plaintiff, if she shall so move, to amend her statement so as to predicate negligence upon the act of the defendant in leaving the door open, so that it could swing shut, under the circumstances alleged in her statement.

For the giving of the last-named instruction the judgment of the circuit court must be reversed, and the cause remanded. It is so ordered. All the judges concur.