HENRY B. READ v. VALLEY LAND & CATTLE COMPANY.

FILED NOVEMBER 19, 1902. No. 12,242.

Commissioner's opinion, Department No. 2.

1. **Expert: OPINION: ULTIMATE FACT.** It is improper to permit an expert to give his opinion on the ultimate fact to be determined by the jury.

2. ———: ———: ———: AMOUNT OF DAMAGES. It is an invasion of the province of the jury in the trial of a cause to permit an expert to give his opinion as to the amount of damages which should be awarded.

3. **Non-Expert Witness: OPINION OF WITNESS: RESTRICTION TO FACTS.** Where it is practicable to place before the jury all the facts supporting the opinion of a non-expert, the witness should be restricted in his testimony to such facts, and the jurors left to form their opinion from the facts alone, without the aid of the opinion of the witness.

ERROR from the district court for Lincoln county. Action in assumpsit and for damages for non-delivery of chattels after sale, consolidated with several counts of different forms of trespass. Tried below before NORRIS, J. Judgment for plaintiff. Defendant brings error. *Reversed.*

*John H. Bower, Albert F. Parsons, Edwin E. Squires,* and *Nathaniel P. McDonald,* for plaintiff in error.

*Hoagland & Hoagland* and *Wilcox & Halligan, contra.*

OLDHAM, C.

In May, 1897, the defendant in this cause of action and Riley E. Haskell entered into an agreement for the formation and organization of the Valley Land & Cattle Company. Haskell was the owner of a ranch in McPherson county, which he agreed to deed over to the corporation at the agreed price of $16,000, and defendant Read agreed to deliver to the corporation $16,000 worth of cattle the following October. Under this agreement the Valley Land & Cattle Company was duly incorporated, and Read and Haskell each took half of the shares of the corporation. When the time came for the delivery of the cattle by defendant, Read, he had purchased a herd of about 2,500 head, which were driven to the ranch, and from this herd about 1,000 head were selected by the company and branded with its brand. The remainder of the herd were branded with the private brand of Read, and remained on and about the ranch which Haskell had deeded to the company. These cattle had all been purchased in New Mexico, and in the latter part of October there was a heavy snowstorm, and in this storm about 200 of the cows

and calves belonging to the company, and about an equal number of those belonging to Read, perished. After this occurrence, disputes arose between Haskell and Read, and several causes of action were instituted growing out of these differences. The suit at bar was the result of the consolidation by agreement of two causes of action instituted in the name of the company against defendant, Read. The first cause of action was for damages for failing to deliver $16,000 worth of cattle to the company. The answer of the jurors to a special interrogatory indicates that this cause of action was found in favor of defendant, Read, and consequently it need not be further noticed. The second cause of action was upon an account composed of several items alleged to be due from the defendant to the cattle company. To this count defendant filed a counter-claim, and the evidence shows clearly and undisputably that on this cause of action there was a considerable sum due from the company to defendant Read. The third cause of action in the petition charged, in substance, that defendant wrongfully drove about 1,600 head of his cattle upon the ranch of plaintiff and commingled them with 1,000 head of plaintiff's cattle, and by reason of this trespass caused the death of the 200 head of plaintiff's cattle during the storm. The second count of this third cause of action, charges that while the defendant's cattle were trespassing on the ranch, they ate up and destroyed plaintiff's hay and other feed, occupied plaintiff's corrals and pastures, and destroyed fences, to the damage of the ranch and cattle thereon in the sum of $2,000. Defendant answered this third cause of action by alleging that his cattle were on the ranch by consent of himself and Haskell, who were the sole owners of the stock of the company; that the loss of plaintiff's cattle was caused by the act of God, and denied any damage by reason of trespass of his cattle on the ranch. These different causes of action were all submitted to the jury under instructions concerning which there is no complaint, and the jury returned a verdict for plaintiff in the sum of

$1,600. There was judgment on the verdict, and defendant brings error to this court.

Our attention is called in defendant's brief to numerous alleged errors of the trial court in the admission and exclusion of testimony, only two of which it will be necessary to discuss. In the examination of Pinkerton, one of plaintiff's witnesses, he was asked: "I will ask you to state to the jury from your experience as a cattle man and your knowledge of the Valley Land & Cattle Company's ranch and facilities for handling cattle, what in your judgment would be the damage occasioned by placing 1,200 head of cattle upon that ranch, over and above about 1,000 head of cattle that were owned by that company, and kept there on that ranch from about the 4th or 5th of October up to the 13th of December?" To which he answered: "I would think $2,000 would be little enough." J. B. Haskell, another of plaintiff's witnesses, was asked: "From your knowledge of that storm and of those cattle, what would you say would have been the loss in that kind of a storm if those cattle had not been there of Read's?" He answered: "There would not have been any loss, it would not have been anything" * * *. Proper objections were interposed to each of these questions by the defendant, and the action of the trial court in permitting this testimony to go to the jury is strongly urged as reversible error.

In this state a liberal rule has been adopted as to the qualifications of an expert for the purpose of testifying to matters not of common information; and considerable latitude is given the trial judge in determining whether or not a question at issue is a proper subject of expert testimony. *Missouri P. R. Co. v. Fox,* 60 Nebr., 531. But it has never been intended, as we understand it, to extend the rule so as to permit experts to testify as to the ultimate fact to be determined by the jury; nor has it ever been permitted an expert, with the approval of this court, to testify as to his opinion of the amount of damages that should be awarded in a cause at issue. If qualified as an expert, and if the

subject be one requiring peculiar knowledge and skill, and not a subject of common understanding, he may detail the facts within his knowledge, from a consideration of which the jury may be enabled to arrive at the extent of the injury; but to go further than this would plainly permit him to invade the province of the jury. This view is in harmony with the holding of this court in *Fremont, E. & M. V. R. Co. v. Marley*, 25 Nebr., 138, 13 Am. St. Rep., 482,[*] and is also supported by the holdings in *Chicago & A. R. Co. v. Springfield & N. W. R. Co.*, 67 Ill., 142; *Old v. Keener*, 22 Colo., 6, 43 Pac. Rep., 127; *Madden v. Missouri P. R. Co.*, 50 Mo. App., 666; *Muldowney v. Illinois C. R. Co.*, 39 Ia., 615. It follows, from this view of the subject, that the court erred in permitting the witness, Pinkerton, to give his opinion as to the amount of plaintiff's damage; this being a question for the jury and not for the witness to determine.

After a careful and exhaustive review of the leading cases on expert testimony, the supreme court of Ohio, in the case of *Baltimore & O. R. Co. v. Schultz*, 43 Ohio St., 270, lays down the following propositions as fairly reflecting the current of authority on the subject of the admissibility of opinions of witnesses in evidence (p. 282) :

"1. That witnesses shall testify to facts and not opinions is the general rule.

"2. Exceptions to this rule have been found to be, in some cases, necessary to the due administration of justice.

"3. Witnesses shown to be learned, skilled or experienced in a particular art, science, trade or business, may, in a proper case, give their opinions upon a given state of facts. This exception is limited to experts.

"4. In matters more within the common observation and experience of men, non-experts may, in cases where it is not practicable to place before the jury all the primary facts upon which they are founded, state their opinions from such facts, where such opinions involve conclusions material to the subject of inquiry.

[*] See excellent note on opinion evidence, page 488, at end of case.
—W. F. B.

"5. In such cases the witnesses are required, so far as may be, to state the primary facts which support their opinions.

"6. Where it is practicable to place palpably before the jury the facts supporting their opinions, the witnesses should be restricted in their testimony to such facts, and the jurors left to form their opinions from these facts, unaided by the mere opinions of the witnesses.

"7. As the warrant for the admission of the opinions of witnesses as evidence is found in some exception to the general and very salutary rule which requires that only facts be stated to the jury, it is the duty of a reviewing court to see that the admission of mere opinions as evidence was within some one of the established exceptions to such general rule; and where it does not appear upon the whole record, but that the jury was equally capable with the witnesses of forming an opinion from the facts stated, it is error to admit in evidence the opinions of witnesses."

It seems to us, in the light of this authority, that the testimony of the witness Haskell, above set out, was clearly inadmissible. In the first place, he did not qualify himself in any manner as an expert on diseases or causes of the death of cattle; his only claim of special skill being based on the fact that he had been a long time engaged in the cattle business. Hence the only ground on which his opinion would be admissible would be as a non-expert, where it was impossible to place before the jury all the facts upon which the opinion was founded; but no such foundation as this was, or could have been, laid for the testimony admitted. Everything connected with the storm, with the surroundings and appearance of the cattle after their death, he could have detailed to the jury; and having done this, the jury would be equally capable with him in arriving at an opinion as to what was the proximate cause of the death of the cattle.

Much other testimony of a similar character to this was admitted during the progress of the trial over defendant's

objection; and as the loss of plaintiff's cattle during the storm was one of the chief causes of complaint against the defendant, and as there is not sufficient evidence to sustain a verdict for plaintiff other than on the third cause of action, we can not say that this evidence was not prejudicial in its effect, and we therefore recommend that the judgment of the district court be reversed, and the cause remanded for further proceedings.

BARNES and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, and this cause is remanded for further proceedings according to law.

REVERSED AND REMANDED.

NOTE.—*Catholic Priest as Insanity-Expert.*—Witness, Lawrence Serda, was called to testify as to the mental condition of testatrix. in a contested-will case. He deposed that he was a Roman Catholic priest, and had officiated as such for ten years; that he was regularly educated for the priesthood at a university in Spain; that one of the objects of the preparatory education of a priest, as he was taught, was to make him competent to pass upon the mental condition of a communicant; that for that purpose, to a limited extent, physiology and psychology were branches of his studies; that, to officiate as a priest, it was requisite that he should be skilled in determining the mental condition of those who sought the sacraments; that in every case of administering the rites to invalids or dying persons, it was necessary for the priest to make an examination of the mental condition of the recipient to ascertain if his mind was in a proper state to reason or act of his own volition: that the sacrament could only be administered after such a preliminary examination; that, *ergo*, witness was daily required to exercise and pass his judgment on the mental condition of persons. Upon this foundation, *inter alia* as to his personal examination of the testatrix, witness was asked for an opinion as to her mental condition. Objected to, on the ground that the witness had not been shown to be an expert. Sustained.

The supreme court reversed the nisi-prius judge, and allowed the witness to give his opinion. *Estate of Toomes,* 54 Cal., 509.—W. F. B.