CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY V. GEORGE HOLMES, JR., ADMINISTRATOR OF THE ESTATE OF JOHN E. OAKLEAF, DECEASED.

FILED APRIL 30, 1903. No. 12,352.

1. **Action Under Lord Campbell's Act:** EVIDENCE. In an action by an administrator for the benefit of the widow and children under section 2, chapter 21, Compiled Statutes, evidence as to the amount of property left by the deceased is inadmissible. *Chicago, R. I. & P. R. Co. v. Hambel*, 2 Neb. (Unof.) 607, followed.

2. **Evidence Admissible for One Purpose.** Where evidence admissible for the one purpose is not relevant as to other subjects or for other purposes, an instruction limiting its effect must be asked; but where evidence received is not admissible for any purpose, no such request is necessary.

3. **Expert Witness:** ULTIMATE FACT. It is error to permit an expert witness to give his opinion on the ultimate fact to be determined by the jury.

4. ———: ERROR WITHOUT PREJUDICE. Where the facts upon which such opinion is based are stated, and the conclusion is one which must necessarily be drawn from such facts, error in permitting an opinion upon the ultimate fact to be determined by the jury to be given in evidence is without prejudice.

5. **Witness:** CONCLUSION. But where the witness saw the occurrence with reference to which he testifies, and differences of opinion as to the conclusion to be drawn may reasonably arise, he should be required to state facts, rather than give his conclusion upon the ultimate issue.

ERROR to the district court for Douglas county: WILLIAM W. KEYSOR, DISTRICT JUDGE. *Reversed.*

*M. A. Low, W. F. Evans, James M. Woolworth* and *William D. McHugh,* for plaintiff in error.

*George W. Cooper* and *Martin Neilan, contra.*

Pound, C.

The accident out of which this case arises occurred upon a track in a portion of the yards of the Union Pacific Railroad Company in Omaha, used jointly for switching purposes by the Union Pacific Company and the Chicago, Rock Island & Pacific Railway Company, the defendant. The particular track is known as track No. 1, and is used for cars which are distributed to other tracks and made up into trains. Oakleaf, the deceased, whose administrator is plaintiff in this case, was a switchman employed by the Union Pacific Company. At the time of the accident he was assisting in making up a train upon the east end of said track No. 1. This track slopes from west to east to such an extent that a car can hardly stand without having the brakes set. The Union Pacific Company had twenty cars, nearly all of them loaded, at the east end of the track, and the brakes were set only upon one car, which was the extreme car at the east end. The switch engine was at the east end of this string of cars and was endeavoring to couple the last car of the twenty to the others and to take the cars east upon the track. It made several attempts to couple the one car to the other nineteen, but upon each occasion the coupling, which was automatic, failed to work. Oakleaf went in between the one car and the remaining nineteen, arranged the coupling, and signaled to the engineer to back up. As the coupler failed to work, he went in again, in the endeavor to repair or adjust the coupling, and, while there, the nineteen other cars moved down upon the sloping track and caught him between the couplers of the two cars, killing him immediately.

The theory of plaintiff is that these cars came down and caught Oakleaf between the couplings by reason of being struck or run into at the west end by a Rock Island train, which was engaged in switching at the west end of said track No. 1, and that there was negligence on the part of the Rock Island Company in not stationing some one so

as to warn the employees of the Union Pacific Company, and in not taking proper precautions to prevent their cars from pushing into those switching at the other end of the track.

The defendant's theory was that as the nineteen cars were standing on a sloping track, where a single car could scarcely stand without brakes being set, and as they were heavily loaded and the brakes were not set, the repeated jars, as the engine and single car pushed into them from the east in the endeavor to make a coupling, were sufficient to put them in motion down the incline and to account for the accident. The defendant contended also that the deceased was guilty of contributory negligence in getting between the iron drawheads, with his back to the nineteen cars standing without brakes set, upon the sloping track, in such a position that he could not see them as they came upon him, whereas, if he had stood upon the side of the drawhead in front of it, he need not have been injured. The jury rendered a verdict for the plaintiff, and the judgment rendered pursuant thereto is before us on petition in error.

The principal errors assigned are based upon rulings in the introduction of evidence. In order to pass upon these rulings intelligently, some further statement of the evidence is requisite. No one testifies directly that the Rock Island cars struck or came in contact with the nineteen cars of the Union Pacific Company, but several witnesses stated it as their opinion that such was the fact. One Potter, a switchman of the Union Pacific Company, introduced as a witness for the plaintiff, who saw more of the accident than any of the other witnesses, testifies that the nineteen cars came down gradually, with no jar and no noise, and moved so gradually and quietly that Oakleaf had no warning. It is manifest that this evidence is entirely compatible with the theory of the defendant that the nineteen cars were set in motion by the jars of repeated attempts at coupling and the fact that they were standing upon a steep incline with no brakes set. The other wit-

nesses who testified speak with reference to the jar pro-
duced by these cars coming down against the one car and
the engine attached thereto.   Their testimony is that there
was a considerable jar and that it came from the west;
but it is clear, in the light of Potter's testimony, that the
defendant's theory affords a complete and adequate ex-
planation of the occurrence, and that a verdict for the
plaintiff must rest on inference and comparative prob-
abilities only.

As has been stated, the action is brought by an admin-
istrator on behalf of the widow and children to recover
damages for alleged negligence in causing the death of the
intestate.   The widow was asked this question: "What
property, if any, did Mr. Oakleaf have at the time of his
death?"   Due objections were interposed, but the court
overruled them and permitted the witness to answer, "Not
any, at the time of his death."   This ruling was excepted to
and is assigned as error.   We think the case in this respect
is the converse of and is governed by *Chicago, R. I. & P. R.
Co. v. Hambel,* 2 Neb. (Unof.) 607.   In the *Hambel* case the
defendant sought to prove that the deceased left a large
and valuable estate.   Here the plaintiff was allowed to
show that he left none.   As the court said, quoting an
eminent authority, in the *Hambel* case:

"A dollar lost, whether by poor man or rich man, is
neither more nor less than a dollar, and a reasonable ex-
pectation of benefit to a certain amount, must, when lost,
be compensated to the same extent, whether the loser be
rich or poor."

The plaintiff showed in evidence how much the deceased
earned, what portion of his earnings he devoted to his fam-
ily, and his expectation of life.   Also, his character and
disposition as to industry and frugality were shown.
These facts determined the damage which his wife and
children had sustained.   Whether he left them in wealth
or in poverty had no bearing upon the case.   Counsel argue
that the evidence was admissible to show whether he was
saving and frugal and had accumulated an estate.   But it

does not go to that point. If he left property, it did not follow that he had earned or saved it. He might have derived it from gift or by inheritance. Moreover, the evident purpose was, not to ascertain whether he had accumulated property, but to show that his widow and children were left destitute. The testimony in question obviously might have been prejudicial. Having been shown in evidence, the destitution of the beneficiaries in the action was a matter to be urged by counsel in argument and considered by the jury. But there was no issue in the case upon which that fact was relevant, and it could not fail to excite sympathy and prevent a dispassionate review of the questions of fact, "uninfluenced by sentimental considerations." *Robertson v. Brown,* 56 Neb. 390, 391. We have seen that there was a very close and very grave question; whether the defendant was in any manner responsible for the death of plaintiff's intestate, and whether the deceased was not guilty of contributory negligence. In view of all the evidence and the doubts which it suggests as to the defendant's liability, we can not say that the error was without prejudice. Counsel suggests that an instruction should have been requested. Where evidence admissible for one purpose is not relevant as to other subjects or for other purposes, an instruction limiting its effect must be asked. *Carleton v. State,* 43 Neb. 373, 396, 404. Where it is not admissible for any purpose, no request is necessary.

Counsel for the plaintiff asked one of his witnesses, a switchman in the employ of the Union Pacific Company, who had seen the accident, this question: "When Mr. Oakleaf, in the performance of his duty, at that time and place, went in there to do this work, was it necessary for him to do what he did do?" Objection was made to this question; it was overruled; and the witness was permitted to answer in the affirmative. We think this ruling was erroneous. It is error to permit an expert to give his opinion on the ultimate fact to be determined by the jury. *Read v. Valley Land & Cattle Co.,* 66 Neb. 423. The very question which the jury were to decide was, whether it was necessary for

Oakleaf to stand in front of the drawhead, with his back
to the nineteen cars, or, whether, as a prudent man, he
should not have stood upon the side in such position that
he would not be crushed between the drawheads in case the
cars came together. The witness Potter testifies that in
order to see what was the matter with the coupling, which
was failing to work, it was not necessary for Oakleaf to
get in front of the drawhead. Testimony to this effect was
scarcely needed, because it must be apparent to any reason-
able mind that the coupling could be examined as easily
by standing at the side and looking at it, as by getting
squarely in front of it, and between the projecting couplers
of the cars. If the testimony in question is regarded as
that of an expert, it is clearly incompetent, under the rule
announced in *Read v. Valley Land & Cattle Co. supra.*
Whether or not it is intended as expert evidence, it is open
to the further objection that the witness in question saw
the accident, or at least had personal knowledge of the cir-
cumstances under which it took place, and was able to state
fully the situation and circumstances from which the jury
could judge whether Oakleaf's course was necessary and
prudent. He should have been required to state the facts
from which his opinion was derived, so long as it was prac-
ticable to place those facts before the jury, and to state
what would be a prudent and careful course in doing what
Oakleaf had to do. The jurors would then have been left
to form their own opinion from such facts and from the evi-
dence as to what would be a proper way of doing the work.
It is contended on behalf of the plaintiff that the error was
not prejudicial, because the conclusion was one which the
jurors must have drawn necessarily from the facts if the
witness had not given his opinion. We can not agree. It
seems evident to us that there was no necessity for the
plaintiff to put himself in such situation as he did and, as
has been seen, one of plaintiff's witnesses so testifies.
Counsel urges further that the witness whose opinion was
allowed to be given had previously stated all the circum-
stances upon which his opinion is based. Upon examina-

tion of his evidence, we find that he stated the general circumstances of the accident, but nowhere does he state the nature and construction of the coupling, or other facts connected with it indicating any necessity for the plaintiff to examine it as he did.

We therefore recommend that the judgment be reversed, and the cause remanded for a new trial.

BARNES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED.